UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NYDIA A., ) | |
| ) | |
| Plaintiff, ) | No. 24-cv-1435 |
| ) | |
| v. ) | Magistrate Judge Keri L. Holleb Hotaling |
| ) | |
| FRANK BISIGNANO, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nydia A.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 12] is GRANTED and the Commissioner's motion for summary judgment [Dkt. 13] is DENIED; the Court hereby remands this matter for further proceedings.

1. **Procedural History**

On September 3, 2021, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on May 14, 2021. [Administrative Record ("R.") 11.] The claim was denied initially and on reconsideration. [*Id.*] On June 2, 2023, after an Administrative Hearing, an Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled. [R. 11-21.] The Appeals Council denied review on December 20, 2023 [R. 1-6], rendering the ALJ's June 2, 2023 decision the final decision of the Commissioner. 20 C.F.R. §404.981. On February 21, 2024, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).
[2] Plaintiff filed a "Social Security Motion" entitled a Brief in Support of Reversing the Decision of the Commissioner [Dkt. 12], which the Court construes as a motion for summary judgment.

## 2. The ALJ's Decision

In the June 2, 2023 decision, the ALJ followed the familiar five-step sequential analysis for disability determinations. Before conducting that analysis, the ALJ determined that Plaintiff meets the insured status requirements through June 30, 2026. [R. 13].

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 14, 2021, the alleged disability onset date. [*Id.*] At Step Two, the ALJ found Plaintiff had severe impairments of multiple sclerosis ("MS") and obesity. [R. 13-14.] At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. [R.14-15.]

Before Step Four, the ALJ found the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work[3] with some limitations. Although the ALJ found "no limitations" in Plaintiff's "total ability to sit throughout an 8-hour workday," among other limitations, as is relevant here, he limited her to lifting or carrying up to 10 pounds occasionally and lighter weights frequently, to standing or walking off and on for a total of two out of eight hours, and being allowed to use a cane at all times when walking longer than five minutes. [R. 15, 19.] At Step Four, the ALJ determined that Plaintiff could perform past relevant work as a receptionist, doctor's office (DOT#237.367-038); receptionist (DOT#237.367-010); and insurance customer service clerk (DOT#219.387-014). [R. 20-21.]

Because of these determinations, the ALJ concluded the analysis before Step Five and found Plaintiff was not disabled under the Act. [R. 21.]

---

[3] Although the ALJ did not specify the exertional level within the quoted RFC, in his supporting analysis, he said he was "overall persuaded by the prior administrative findings rendered by the State Agency as the claimant was found capable of work at a sedentary exertional/physical level, which is consistent with the medical evidence of record and supported by objective findings." [R. 19.] He also used the sedentary work level when posing hypothetical questions to the vocational expert during the Administrative Hearing. [R. 97.]

2

3. **Social Security Regulations and Standard of Review**

The Court's scope of review is limited to deciding whether the Commissioner's final decision is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). "This is not a high threshold; it requires only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (cleaned up). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation omitted). Despite the Court's deferential review of the ALJ's decision, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his/her conclusion, which is satisfied by an "adequate[] discuss[ion of] the issues and evidence involved in the claim." *Hess*, 92 F.4th at 676; *Dunn v. Saul*, 794 F. App'x 519, 522 (7th Cir. 2019); *see also Tremayne G. v. O'Malley,* No. 21-cv-1541, 2024 WL 1214753, at *2 (N.D. Ill. Mar. 21, 2024) ("Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not build an accurate and logical bridge from the evidence to the conclusion.") (signals and citation omitted). Finally, as to this Court's obligations, "[a] district (or magistrate) judge need only supply the parties…with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

4. **Discussion**

The Court remands on two bases and will not reach Plaintiff's remaining arguments for remand.

First, the Court agrees with Plaintiff that the ALJ failed to properly assess her well-documented fatigue. In his written opinion, the ALJ acknowledged Plaintiff's fatigue as among

Plaintiff's reported symptoms in a December 2021 examination with her primary care physician ("PCP") and a February 2022 consultative medical examination. [R. 17; *see also* R. 572 (noting sleep disturbance and daytime fatigue).] Additionally, the ALJ recognized that Plaintiff had complained of daytime sleepiness and was referred to a sleep study following a PCP visit on September 27, 2022. [R. 18.]

However, as Plaintiff notes [Dkt. 12 at 15], the ALJ overlooked multiple other instances of reported fatigue. [R. 130, 138, 286, 347, 349, 359, 429, 446, 448, 458, 463, 597.] For example, during a PCP visit on May 13, 2021, Plaintiff was diagnosed with "chronic fatigue" after reported sleep disturbances. [R. 349.] She similarly reported "feeling very fatigued" at a neurologist visit on September 14, 2021. [R.463.] In her disability application, Plaintiff explained "the fatigue just seems worse[,]" and she "can't complete a day without falling asleep." [R. 286.] Both State Agency evaluators also listed fatigue among Plaintiff's symptoms. [*See* R. 130, 138.] And, at the Administrative Hearing, in response to questions from her attorney about her symptoms, Plaintiff testified she was "up throughout the night for hours. And the only time [she] will get some sleep is really kind of during the day . . . maybe an hour at the most." [R. 82.]

Despite the foregoing, at the Hearing, the ALJ did not follow up regarding Plaintiff's fatigue symptoms to determine their scope or severity. Further, in his written opinion, the ALJ sidestepped most of the foregoing and never explained which fatigue-related symptoms he found supported or unsupported, nor did he obviously account for any fatigue-related symptoms within the RFC. [R. 17-18.]

An ALJ's mere mention of fatigue is insufficient where related symptoms are supported by record evidence; the ALJ instead must analyze the claimant's fatigue and its potential effect on job performance. *See Jennifer S. v. Kijakazi*, No. 22-cv-6491, 2023 WL 5289433, at *3 (N.D. Ill. Aug. 17, 2023) (finding that ALJ had not analyzed fatigue stemming from MS) (citations omitted); *see*

4

*also Elaine B. v. Kijakazi*, No. 20-cv-4184, 2021 WL 3511314, at *6 (N.D. Ill. Aug. 10, 2021) (ALJ failed to explain how fatigue, a "common symptom" of MS, was accommodated in RFC finding); *Balbina K. v. Kijakazi,* No. 20-cv-5078, 2022 WL 2046216, at *3 (N.D. Ill. June 7, 2022) ("the ALJ failed to explain how much she credited Plaintiff's reports of fatigue (separate from reports of pain), as the ALJ left unaddressed Plaintiff's reports she consistently needed to nap during the day…"). Here, the ALJ did not discuss Plaintiff's fatigue-related symptoms or explain how they may impact her ability to work and, thus, did not build a logical bridge between the evidence and his conclusions regarding Plaintiff's ability to work full-time. [R. at 11-21.] *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (remand warranted due to lack of logical bridge between evidence and findings).

This failure also is inconsistent with the Agency's rulings, which require an ALJ to discuss all well-documented symptoms. *See* Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, *8 and *2 (requiring a symptoms analysis and explanation of how that analysis led to ALJ's conclusions); SSR 98-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

Further, the Court cannot assume this omission by the ALJ is harmless. To be harmless, it must be near certain that a proper analysis of Plaintiff's fatigue-related symptoms would not alter the ALJ's decision. *See Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010) ("But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless."). Here, the testifying vocational expert opined that no jobs would be available to Plaintiff if she were off task more than fifteen percent of work time. [R. 103.] Because Plaintiff provided long-term and potentially severe evidence of tiredness, including chronic fatigue and daytime somnolence, had the ALJ addressed it,

5

the evidence may have impacted the conclusion regarding Plaintiff's ability to work full-time. Thus, the ALJ's failure to grapple with Plaintiff's fatigue symptoms compels remand. *Bahtishahe H. v. Dudek,* No. 24-cv-7735, 2025 WL 1042815, at *4 (N.D. Ill. Apr. 8, 2025) ("The ALJ's failure to properly account for Plaintiff's fatigue is another error requiring that this matter be remanded."); *Ronald L. v. Kijakazi,* No. 20-cv-7335, 2023 WL 3689457, at *3 (N.D. Ill. May 26, 2023) (finding ALJ "failed to grapple with [claimant's] complaints of severe fatigue unique among those suffering from MS and that are supported by the objective medical record" and, on remand, "must consider whether [claimant's] subjective complaints of lassitude are supported by the medical record").

Second, Plaintiff alleges the ALJ insufficiently supported his finding that Plaintiff has no limitations in sitting. The Court agrees.

The State Agency consultants both opined Plaintiff was limited to sitting "[a]bout 6 hours in an 8 hour workday." [R.130, 139.] Dr. Michael Palash, Plaintiff's primary care physician, opined in an MS RFC questionnaire that Plaintiff could sit for ninety minutes at a time, but less than two hours total per day. [R. 578-79.] In the Administrative Hearing, Plaintiff testified that she could sit for fifteen minutes at most before she had excruciating back pain and had to lie down. [R. 80.]

The ALJ, without a related analysis, found Plaintiff had no limitations in her ability to sit through an eight-hour workday. [R. 15.] The ALJ labeled Dr. Palash's opinions, including sitting limitations, unpersuasive because he was a general practitioner, treatment notes reflected limited examination findings, and "subsequent examination findings" did not support his opined limitations. [R. 201.] None of the ALJ's reasons relate to Plaintiff's ability to sit for extended periods. Even assuming the ALJ properly supported disregarding Dr. Palash's questionnaire, however, the ALJ never discussed the State Agency consultants' opinions regarding limitations on sitting or Plaintiff's testimony regarding her sitting capabilities. The ALJ, in fact, devoted no tailored explanation to Plaintiff's sitting tolerances. The ALJ's opinion therefore lacks a logical connection between the

6

evidence and his conclusion that Plaintiff's sitting capabilities were unlimited in an eight-hour workday. *See Ronald B. v. Saul,* No. 18-cv-7705, 2020 WL 419407, at *3 (N.D. Ill. Jan. 27, 2020) (finding no logical bridge between the medical evidence and ALJ's finding that claimant could sit for six hours where vocational expert opined claimant was limited to sitting less than one hour); *Tina L.*, No. 1:22CV452, 2023 WL 6805872, at *4 (N.D. Ind. Oct. 16, 2023) (holding ALJ provided no support for finding claimant could do work primarily performed while seated where claimant consistently reported pain from sitting more than 10-20 minutes and pointed to support in medical records).

The ALJ must provide evidence for his decision. Mere speculation, unsupported by evidence, is insufficient. *Id.* ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence.") (citing *White ex rel. Smith v. Apfel,* 167 F.3d 369, 375 (7th Cir. 1999)). In this case, the ALJ pointed to no evidence that Plaintiff had unlimited sitting capabilities in a workday. Thus, remand is warranted; the ALJ must properly support any conclusion that Plaintiff has no limitations on sitting. The Court offers no opinion on any claims of error in the ALJ's decision beyond those addressed above.

**5. Conclusion**

For the foregoing reasons, the Court reverses and remands for proceedings consistent with this Memorandum Opinion and Order. Plaintiff's motion for summary judgment [Dkt. 12] is GRANTED and the Commissioner's motion for summary judgment [Dkt. 13] is DENIED.

Dated: August 26, 2025

_____
Keri L. Holleb Hotaling
United States Magistrate Judge